BLOCK (UNITED STATES v.). See Cases Nos. 14,609 and 14,610.

---

## Case No. 1,552.

### In re BLODGET et al.

[5 N. B. R. 472.][1]

*District Court, E. D. Michigan. Nov. 8, 1871.*

BANKRUPTCY—REMOVAL OF ASSIGNEE—COLLUSION —ACTING UNDER ERRONEOUS LEGAL ADVICE.

1. A petition for the removal of an assignee was filed, charging collusion with his brother, incompetency, and involving the estate in unnecessary litigation. The court held that there was a failure to prove the first two charges, and that in regard to the third, if he has erred through erroneous legal advice, it may be cause for ordering him to employ other counsel, but not necessarily for his removal.

2. Prayer of petitioner denied. Costs ordered to be paid out of bankrupt's estate.

In bankruptcy. On the petition of Constant C. Pond, a creditor, on whose petition the bankruptcy proceedings were commenced, for the removal of David B. Hibbard, Jr., as assignee. Answer was put in by the assignee substantially denying the allegations of the petition, and proofs have been taken before Register Eugene Pringle, to whom it was referred for that purpose. [Petition denied.]

W. K. Gibson, for petitioner.

J. G. Dickenson, for assignee.

LONGYEAR, District Judge. The grounds for removal as set up in the petition and claimed on the argument are: 1. Collusion with one W. R. Hibbard, a brother of the assignee, in the sale to the former by the latter of the stock of goods constituting the entire property assets of the bankrupts' estate, in consequence of which a less sum was obtained than what might have been realized. 2. Incompetency. 3. Involving the estate in unnecessary and unwarranted litigation.

The bankrupt act (section 18) provides, "that the court, after due notice and hearing, may remove an assignee for any cause,

---

[1] [Reprinted by permission.]

which, in the judgment of the court renders such removal necessary and expedient." This provision places matters of this sort in the discretion of the court. Such discretion is, however, a legal discretion, and can only be exercised to remove an assignee when cause is shown, rendering such removal either first, necessary, or second, expedient. An extended analysis and review of the voluminous testimony which has been taken, in the view which the court entertains of the case, is unnecessary, and would extend this opinion to an inconvenient length to no profitable purpose. Suffice it to say that I have carefully examined all the proofs, and given full consideration to the same, as well as to the able arguments of counsel on both sides, and I find that the charge of collusion in the sale of the stock of goods is not made out. There were irregularities attending that sale, which, unexplained, were sufficient to cast suspicion upon the good faith of the transaction, and in my opinion, to justify an enquiry into it. But, as explained by the proofs, I fail to see any intentional wrong, collusion or bad faith.

It is complained that the assignee advertised the goods to be sold at public auction on a day within the time during which he was authorized by an order of court, to sell at private sale, thus inducing persons desiring to purchase to refrain from making offers at private sale, in hopes, of course, of getting the goods at a less price at the public sale. While it was clearly irregular thus to advertise, yet I fail to find any direct proof that it was done collusively or for the purpose of misleading those desiring to purchase. If, however, such would have been the necessary or even probable effect of the notice, then the intention that it should have such effect might be presumed, and probably would be, unless rebutted by the assignee. I find, however, from copies of the notices before me, that it was distinctly advertised that the stock was for sale at private sale in the meantime. I know some criticism was passed upon the effect of the language used in this respect in the notice, but I am clear that the language is such that no man of ordinary intelligence could have been misled for a moment. The notices therefore carry upon their face a rebuttal of any intention to mislead, or that they could have that effect even if intended.

It is claimed that by waiting till the day advertised, and selling at public auction, the goods would have brought a better price. I fail to find support for that claim in the proof. The proof in this respect rests entirely upon the opinions of witnesses, some putting the probabilities above and some below the price sold for, but no large difference either way. If the sale made by the assignee was open and fair in all other respects, and was, according to the best of his judgment, with the information he then possessed, the best that could be done, he cannot be convicted of fraud or collusion on the mere varying opinions of men as to what might have been done by waiting, nor even on proof that some one stood ready to pay more for the goods, unless it is also shown that such fact was known to the assignee when he accepted the offer which he did accept. While the legal right of the assignee to sell to his brother, all other circumstances being equal, in preference to others, is conceded, yet his having done so is very properly alluded to as a ground for suspicion; and it is claimed that he so sold to his brother while there were offers at a better price pending. There was one better offer made, but in hopes of getting still better offers the same was not accepted at the time. When, however, the assignee had concluded to accept it, the offer was withdrawn, and the matter was again left upon his brother's offer as the highest that had been made. That there was no higher offer pending when he accepted his brother's offer clearly appears by the proof.

The brother's offer was made five or six days before it was accepted. During this time it was freely talked about by the assignee, and also by the brother. It was made use of with others who, it was thought, might desire to purchase, to obtain a better offer. Creditors were consulted, even the petitioner, in the matter, and no objection seems to have been made to a sale to the brother if he would pay as much, or more than any one else. To my mind the proof is clear, that the assignee used all reasonable diligence to obtain a higher price before accepting the offer of his brother. During the five or six days that elapsed between the offer for the goods and the acceptance, the assignee was selling at retail, and at the time of the sale had realized about two hundred and fifty-five dollars in cash. This he turned over to his brother, and then the same money was paid back to him on the purchase price. This was certainly a suspicious circumstance, and had a bad look for the assignee. The assignee and his brother, however, explain the matter in this manner: The offer was thirty per cent. of the appraised value for the whole stock before any sales had been made. When the offer was accepted, it was deemed to relate back to the time when the offer was made, and the money was turned over with the stock that remained, in lieu of the goods which had been sold. This explanation removes all suspicion of any fraud on the estate having been intended, and leaves it to stand as an irregularity merely, evidently resulting from a misapprehension by the assignee of his powers and duties as assignee. Such a transaction would, of course, have been perfectly competent for a person dealing in his own right, with plenary powers of disposition over his own property. But not so with the assignee. He must keep within his powers as conferred by the law, and the orders of court under which he acts. Here he was acting under a special order of the court authorizing him to sell goods at private

sale—not the money he might receive for the goods. When he had once sold any portion of the goods and received the money for them, his power under the order, so far as the goods so sold were concerned, was at an end. He could not resell the goods, nor could he sell the money he had received for them. But I will not now decide what effect the mistake will have upon the assignee in the settlement of his final accounts, where the question may very properly arise. All I intend to decide now is, that it was a mere mistake, and not a device to defraud the estate. Although the sale was made in terms for cash, the assignee in fact waited a few days for a part of the purchase money, but the whole amount was eventually paid to him. This, of course, he had no legal right to do, and if any injury had come to the estate on account of it, the assignee and his bail would have been liable. Although this act was an irregularity, and perhaps may savor of favoritism under the circumstances, yet as the estate was perfectly secure, and the whole amount was in fact realized according to the terms of the sale, I fail to see in it, in and of itself, such evidence of fraud or collusion as would warrant the court in resorting to the severe measure of removal for that cause. So much as to the first ground alleged for removal, viz: that of collusion. The second ground, that of incompetency, will be considered last.

The third ground, that of involving the estate in unnecessary and unwarrantable litigation, is based upon the fact that the assignee commenced a suit in the United States circuit court for this district, by bill in equity against the petitioner here, in relation to certain personal property to which it was alleged said Pond claimed title; and which suit, on an intimation from the court that bill in equity was not the proper remedy, was discontinued by the assignee. It is proven that the assignee in conversation with Pond and his counsel, before said suit was commenced, said that he believed, or had no doubt, the property in controversy belonged to Pond. But this did not conclude the assignee. If he were afterward to change his mind upon obtaining advice of counsel, or otherwise, or if the creditors or a respectable number of them should demand that the question be submitted to judicial decision, the assignee would be perfectly justifiable in so submitting it. If adopting a remedy to test the question which the court should decide to be a wrong one is to be made a cause for removal, I fear that very many of the assignees in bankruptcy stand upon very precarious grounds. He may have done so under an erroneous opinion of his own, or under erroneous legal advice, which was probably the case in this instance, but so long as bad faith is not shown it cannot be alleged against him. Erroneous legal advice, where the errors are so gross and frequent as to be evidence of incompetency of the legal advisers he has chosen, may be cause for ordering the assignee to employ other counsel, but not necessarily for removing the assignee.

The whole case narrows itself down to the second ground alleged for removal, viz., that of incompetency. The assignee is a young man of fair education and talent, but as yet with but little experience in the domain of law. The creditors, with but slight opposition, and that on the ground of his locality alone, have seen fit to place him where he is. And those creditors—and they are considerable in numbers and in the amount of their claims—now, after all that has been charged and shown against him, with the single exception of the petitioner, acknowledge themselves—some expressly and others tacitly—content to have him close up the estate. Under these circumstances it would be a severe penalty upon the assignee, and, as it seems to me, doing him an unnecessary injury, to remove him from his position because he has been guilty of unintentional irregularities in his administration of the estate—irregularities, too, which, as we have seen, have not operated, and cannot, to the injury of the creditors. If, however, such a step seemed to be necessary, or even expedient, I should not hesitate to adopt it. But it seems to me that such is not the case. If from the proofs before me, I could see even reasonable cause to believe that the sale of the stock of goods was for any cause invalid, and that it would be for the interest of the creditors that it should be further inquired into, the court would not hesitate to remove the present assignee and appoint a new one to make such investigation. But I fail to see any such cause; on the contrary it is patent to my mind that any attempt to invalidate that sale would result in nothing but a wasteful expenditure to the estate. The sale of the stock then being valid, and there being, as I understand, no other assets to dispose of, so that, virtually, nothing is left to be done by the assignee but to render his final account and close up his trust, I cannot see that it is necessary or expedient even, to change assignees. All that a new assignee could do would be to receive what is in the present incumbent's hands, and then proceed to do just what it is the duty of the present assignee to do, and what, if necessary, he may be compelled to do in the premises. That may just as well be done through the present assignee as to go through the unnecessary performance of a removal and appointment. Any questions which a new assignee might raise as to the legal liability of the present incumbent on account of any errors he may have committed, or as to any charges which he may make for disbursements or otherwise, can be raised just as well by any creditor upon the settlement of the assignee's accounts. I cannot see, therefore, that a removal of the present assignee is either necessary or expe-

dient. The prayer of the petition is therefore denied.

As to the question of costs. While unwarranted or vindictive attacks upon assignees ought to be not only discouraged, but punished, and the estates of bankrupts ought to be scrupulously guarded against unnecessary costs and expenses, yet, inquiry into the conduct and dealings of assignees, when their transactions are such, unexplained, as justly to give rise to suspicions of their honesty and good faith, ought not to be discouraged. The liability to such inquiry and investigation into their conduct will tend to make them vigilant and careful in the discharge of their duties. I have already said in the commencement of this opinion, that I consider this inquiry justifiable under the circumstances. I think, therefore, that the petitioner ought not to be mulct in costs. The assignee had the right and it was his duty to vindicate himself from the charges of collusion and bad faith, (and it is upon these points that most of the evidence was taken) and he has succeeded in doing so. I think, therefore, that he ought not to pay costs. It is therefore one of those cases in which the costs of the proceedings must be paid out of the estate. In re Mallory [Case No. 8,990].

Ordered accordingly.